ALBANY,
August, 1811.

ADAMS
v.
SUPERVISORS
of Columbia.

</div>

Motion denied.

Adams *against* THE SUPERVISORS of Columbia County.

A RULE was obtained at the last term, requiring the defendants to show cause why a *mandamus* should not issue, to compel them to audit an account of the plaintiff's for medicine and attendance, as a physician, on one *Nathaniel Turner*, a pauper.

*E. Williams*, for the defendants, now showed cause; and from the affidavits which were read, the following facts appeared. On the 23d *April*, 1810, one of the overseers of the poor of *Hudson* applied to *Adams*, as a physician, to attend on the *pauper;* and *Adams* attended,

An *order*, signed by *two justices*, to an overseer of the poor, to provide for the maintenance of a pauper, under the first section of the act of the 24th March, 1809, (sess. 32. c. 90.) is valid, And though such order does not recite that the justice and overseer inquired into the state and circumstances of the pauper, before giving the order, such an inquiry will be intended to have been made and implied from the order. The justice and overseer need not make the inquiry together, for the order is not to be their joint act.

Matters of *form* in orders for the relief of paupers, are to be overlooked, and the justice has a reasonable discretion, as to the nature and extent of the weekly allowance, and if the pauper be sick or wounded, medicines and the attendance of a physician, are a reasonable charge; but all the charges of maintaining the pauper must be adjusted and paid, in the first instance, by the overseers of the poor, who are responsible to the persons rendering the assistance. A *mandamus* will not lie, at the instance of the party, to compel the supervisors of the county to audit and pay the account of such charges. The supervisors are only to pay such accounts as have been adjusted and paid by the overseers, in pursuance of the justice's order.

ALBANY,
August, 1811.

ADAMS
v.
SUPERVISORS
of Columbia.

from time to time, until the 17th *July*, 1810, and presented his account, amounting to 94 dollars and 73 cents, to the defendants, who refused to audit it.

Two justices of the county made an *order*, under their hands and seals, upon the overseers of the poor of *Hudson*, to provide for the pauper from the 23d of *April*, 1810, for his weekly board, at 2 dollars and 50 cents, with other necessaries, for clothing, and also such medicine and attendance for the recovery of the pauper, as should be thought necessary.

One of the overseers stated, that the pauper had no settlement within the state; that he was not in a situation to be removed, and that he supported him, pursuant to the *order* of the justices, and directed the plaintiff to attend him.

Some of the supervisors, in their affidavits, stated, that one of the justices who made the order was examined by the board, and stated that the justices, or either of them, did not, with the overseers, visit the pauper, to his knowledge.

*Van Buren*, for the plaintiff.

*Per Curiam.* The act of 24th *March*, 1809, (sess. 32. c. 90.) makes it the duty of the overseers, or one of them, of the city or town in which any pauper happens to be, who requires relief, and hath no settlement within the state, to inquire, together with any justice of the county, into the condition of the pauper, and if it shall appear necessary to the overseer or justice, the justice is to give an order on the overseers for an allowance to the pauper, and such allowance is to be a county charge.

The first question in this case is, whether the order was valid. The act does not require two justices to unite in making the order, but if it be made by two, or more, instead of one, *that* circumstance cannot weaken it, nor

ALBANY,
August, 1811.

ADAMS
v.
SUPERVISORS
of Columbia.

are the overseers, or either of them, to unite in making it, for the order is to be made in writing, by the justice upon the overseer. But the act requires, as a preliminary step, that the justice and overseer shall inquire into the condition of the pauper, and if it shall appear to them that relief is necessary, the order is to be made. The order does not aver, by way of recital, that those steps were taken; but they are to be intended to have been taken, and are implied in the order itself. The act does not prescribe any formal evidence of the fact of its having *appeared* to the overseer, as well as the justice, that the pauper stood in need of support. It is to be necessarily inferred to have so appeared to the overseers, as they did not, when called upon, show any sufficient cause to the contrary. They must have conceded the fact. Nor was it requisite that the overseer and justice should have inquired *together*, into the condition of the pauper, because they are not to do any joint act. The order is to be the exclusive act of the justice, and the cases which were cited to this point are not applicable. The order is, of itself, evidence that the overseers and justices had all seen the pauper, for he had been before them, and the inquiry by each, into his circumstances, is necessarily to be inferred. There was no formal evidence of that fact required by the statute, and if it is to be reasonably implied, it is enough. The case of *The King* v. *The Inhabitants of Woodsterton*, (2 *Barnard.* 207. 247.) shows that objections as to matters of form, in an order for the relief of a pauper, are to be overlooked, and humanity dictates that such orders should be liberally treated. All that one of the justices stated before the board of supervisors, was, that there was no *joint* inquiry into the state of the pauper. The facts on the face of the order, prove, that each party must have made the inquiry, and the debility and helplessness of the pauper must have appeared to all, for it is nowhere, nor by any person, denied.

ALBANY,
August, 1811.

ADAMS
v.
SUPERVISORS
of Columbia.

The second objection is as to the extent of the allowance. It is not only a weekly sum, but necessary medicine and attendance. The act says the justice is to make "such allowance weekly, or otherwise, as the necessities of the pauper shall require." This gives a reasonable discretion to the magistrate, as to the mode and nature of the allowance. If the pauper be sick, common sense and humanity dictate that medicine and attendance are as necessary as food and clothing, and the precise amount of such medicine and attendance could not be fixed beforehand. It must depend upon the circumstances of the case. The account exhibited, as well as the order of the justices, shows the distressed condition of the pauper. The justices in their order say, that "he must inevitably perish unless timely relieved," as he had a white swelling on his knee; and it appears that the disorder terminated in the amputation of his thigh. If an order on the overseers for medical aid could not be legally made in such a case, what was to be done? Did the statute mean that the man should be left to the aid of private compassion, or to perish? The law ought not to be so narrowly construed, and the order is to be deemed sufficient to cover the expenditure in question.

The third and only remaining question is, as to the regular mode of adjusting and exhibiting the charge to the board of supervisors. It is to be exhibited as a charge paid by the overseers, under the order of the justice. The account exhibited, though signed by the overseer, has never been paid by him, nor is it stated that the overseer had even examined and admitted the account, as just and correct. It was handed by him to the supervisors, just as it had been presented to him by the physician. He was only the agent of transmission. The overseers are not the complainants in the present case. It is *Adams*, the physician, who complains, and sues for the *mandamus*. But the persons who afford assistance to the

pauper are to look to the overseer, and he is to pay them. The statute says that the order " shall be a sufficient voucher for the payment of so much money by the said overseer." The supervisors of the county are not the board to ascertain whether the services have been actually and faithfully rendered to the pauper. That must be adjusted by the overseers of the poor, who are, in the first instance, responsible to the persons rendering the assistance. The supervisors were only to pay such accounts as the overseers had adjusted and paid, *in pursuance of the order.* As the account in question had never been adjusted, allowed and paid, by the overseers of *Hudson,* the supervisors, for that reason, were not bound to notice it, and on that ground alone, the court refuse to interfere. But we have given our opinion on the merits of the case, so that when the account shall have been liquidated and settled by the overseers, and duly exhibited by them to the supervisors of the county, it may be paid, without the necessity of an application to this court.

<div align="right">Rule refused.</div>